FRANCIS GILLETTE AND ANOTHER *vs.* THE CITY OF HARTFORD.

A new charter granted to the city of Hartford, by which the city limits were extended, provided that land within the territory annexed, which was *used exclusively for farming purposes* or was *vacant and unoccupied land*, should not be taxed for city purposes beyond a certain specified rate. A tract of land lying within the territory annexed had previously been purchased by the plaintiffs, partly for the purpose of obtaining places of residence for themselves, partly to use for farming purposes, and partly to hold for sale as city lots. They had opened streets through a part of the tract, on which some building lots had been sold at prices largely exceeding their value as land for farming purposes, and other streets were laid out but not opened. All this part of the tract bordered on streets so opened or projected, and was held by the plaintiffs for present or future sale for building purposes at prices largely exceeding its value for farming purposes, and was in fact worth such prices, but was used, except a small part which was unenclosed, for the purpose of raising farm crops upon until so disposed of, in connection with the rest of the tract; one of the plaintiffs being a practical farmer and managing the whole as a farm for the joint benefit of the plaintiffs. The land having been charged with full city taxes, which were collected of the plaintiffs, they brought an action to recover back the amount paid beyond the rate limited by the charter, and auditors, to whom the case was referred, found that this portion of the tract was "used exclusively for farming purposes," except a part which was "vacant and unoccupied," unless the special facts above stated were to be regarded as rendering the lands not so used or not so vacant and unoccupied within the meaning of the charter. Held, that the lands in question were to be regarded as "used exclusively for farming purposes," or as "vacant and unoccupied" lands, within the meaning of the charter.

The case is not like one of an exemption from all taxes, but is the case of an equitable apportionment of city burdens with reference to participation in city benefits. The act granting the exemption is not therefore to be construed strictly against the party claiming the exemption.

The legislature in the provision in question must be taken to have intended the *practical use* to which land was put, and not the object for which it was *held*.

The charter also provided that the lands annexed should not be taxed to pay interest on the water debt of the city. The city laid a tax " to meet the current expenses of the water works and the interest on the water bonds, to be levied on the polls and rateable estate within the city." Held that the whole tax was illegal, as against the property exempted by the charter, by reason of the illegality of the part.

In recovering back money paid for a tax illegal because laid in part for an illegal object, it is not necessary to show that the money was applied to the illegal object.

ASSUMPSIT, to recover the amount of a tax collected of the plaintiffs by the city of Hartford, to which the plaintiffs claimed that they were not legally liable. The case was referred to auditors by the superior court, by whom the following facts were found.

The General Assembly, at its session in May 1859, granted to the city of Hartford a new charter, by which the limits of the city were greatly extended, and which contained the following provision with regard to the territory annexed by it to the city : " Provided always that no city tax exceeding two cents on a dollar of the grand list, shall be assessed or levied upon any land or lands within the territory added to said city by virtue of this act, so long as said land is or shall be *used exclusively for farming purposes,* or is *vacant and unoccupied land,* and that all farming produce and all stock used in farming and all implements of husbandry belonging to persons residing on said territory so annexed, shall be exempt in the same manner and to the same extent from such city taxation ; and provided also that the persons now and hereafter residing on said territory so added to said city, and the estate of such persons, both real and personal, shall not be liable, by taxation or in any other mode, for any bonded debt of said city, or for interest on the same, or for any part of the present indebtedness of said city on account of the city park."

The plaintiffs before the extension of the city limits resided, and after the extension continued to reside, upon the territory annexed to the city, and owned real estate embraced in the extension, and in the years 1860 and 1861 were taxed by the assessors of the city upon a portion of their lands above the

amount of two cents on a dollar, and to the full amount of other real estate situated within the original limits of the city, which taxes were collected of them by the tax collector of the city.    The auditors found, with regard to a part of these lands, described as pieces 1st, 2d, 3d and 4th, that they were used exclusively for farming purposes ; and with regard to a part of them, described as pieces 5th, 6th, 7th and 8th, that they were used exclusively for farming purposes, except a portion of the same which was vacant and unoccupied land, unless, in the opinion of the court, the fact, which was further found, that the whole tract of land of which these pieces are a part, was originally a single tract, bought by the plaintiffs partly to obtain places of residence, partly to use for farming purposes, and partly to hold for speculative purposes until the value was greatly increased and then to sell the same for building purposes ; that streets have been laid out and made through parts of the same, on which some building lots have been sold at prices largely exceeding the value of the land for farming purposes, and other streets have been projected but not made ; that all the above named pieces border on said streets so made or projected, and are now held by the plaintiffs for present or future sale for building purposes, at prices largely exceeding the value of the land for farming purposes, and are in fact worth such prices ; and that the same are used to raise farm crops on until so disposed of, in connection with other pieces of land which are not available for building purposes and are used and held exclusively for farming purposes ; the plaintiff Gillette being a farmer by profession and managing the whole farm for the joint benefit of the plaintiffs—is to be regarded as rendering said pieces of land not " used exclusively for farming purposes," and not " vacant and unoccupied land," within the meaning of the charter of 1859.

The auditors also found that the common council of the city on the 28th of June 1860 laid a tax of two cents on a dollar for the water department of the city, by the following vote : " *Voted,* That a tax of two cents on the dollar, to meet the current expenses of the water works of the city and the

45

interest on the water bonds or scrip, and to supply any deficiency, be and the same is hereby granted, to be levied on the polls and ratable estate within said city, and of others liable to pay taxes therein, according to the list of 1859." And that there was existing, at the time of the enactment of the new charter, a large funded debt of the city, growing out of the construction of the city water works, and amounting to $375,000, for which the city had issued its bonds on semi-annual interest; and that these bonds, and the interest payable on the same, were the bonds and interest referred to in the vote; and that the full amount of this tax was assessed against the plaintiffs and collected of them by the tax collector of the city.

The auditors submitted to the court the questions of law arising on these facts, and found the amounts to be recovered upon the various results at which the court might arrive; the whole amount, in case all the lands were held to be exempt from full city taxation and the tax for the water department to have been illegally laid upon the plaintiffs, being $385.20 on the former account and $20.68 on the latter, with interest from September 1st, 1862.

The superior court accepted the report, and reserved the questions of law arising upon the facts for the advice of this court.

*Hooker* and *Chamberlin,* for the plaintiffs, contended that the legislature intended by the term " exclusively used," the practical use to which the land was put, and not the purpose for which it was held; that this construction was confirmed by the fact that the act extending the city limits in 1853 used, in a proviso of the same kind, the terms " exclusively *appropriated* to farming purposes," which might cover the object for which the land was held, but which was exchanged for the word " used " in the present charter; that it was not a case for a strict construction against the party claiming the exemption, as it was not properly an exemption from taxation but an equitable apportionment of the city burdens; and that

the tax laid to pay the interest on the water bonds was clearly illegal in respect to that object, and being illegal in part was illegal in the whole ; citing upon the last point *Stetson* v. *Kempton,* 13 Mass., 272, 283 ; *Libby* v. *Burnham,* 15 id., 147, and *Drew* v. *Davis,* 10 Verm., 506.

*C. Chapman,* and *C. E. Perkins,* for the defendants.

1. The lands in question are not to be regarded as " used exclusively for farming purposes " within the meaning of the charter. The rule of construction of acts exempting particular property from taxation is, that such acts are to be construed against the exemption, and nothing is exempted which is not clearly and beyond all question brought within the expressions of the act. *Kendrick* v. *Farquhar,* 8 Hammond, 189 ; *State* v. *Branin,* 3 Zabr., 484 ; *Gordon* v. *Mayor of Baltimore,* 5 Gill, 231 ; *N. York & Erie R. R. Co.,* v. *Sabin,* 26 Penn. S. R., 242 ; *State* v. *Newark,* 2 Dutcher, 519 ; *Cincinnati College* v. *The State,* 19 Ohio, 110 ; *Copp* v. *Town of Norwich,* 24 Conn., 28. The following cases show the leaning of courts in construing similar statutes. *Proprietors of Meeting House* v. *City of Lowell,* 1 Met., 538 ; *Purker* v. *Redfield,* 10 Conn., 490 ; *Northern Liberties* v. *St. John's Church,* 13 Penn. S. R., 104 ; *Matter of Mayor &c., of New York,* 11 Johns., 77 ; *Benoist* v. *City of St. Louis,* 15 Misso., 668 ; *Lefevre* v. *Mayor &c., of Detroit,* 2 Mich., 586 ; *Pierce* v. *Cambridge,* 2 Cush., 611 ; *Chegaray* v. *Mayor &c., of N. York,* 3 Kernan, 220 ; *State* v. *Flavell,* 4 Zabr., 370 ; *State* v. *Ross,* id., 497 ; *State* v. *Robertson,* id., 504. The following authorities show the meaning given to the terms " exclusively," and " exclusively used," by courts in such cases ; *Detroit Young Men's Society* v. *Mayor of Detroit,* 3 Mich., 172 ; *Orr* v. *Baker,* 4 Ind., 86 ; *Cincinnati College* v. *The State,* 19 Ohio, 110 ; *Stewart* v. *Davis,* 3 Murphey, 244 ; *State ex rel. Johnston* v. *Newberry,* 12 Richardson, (Law,) 339 ; *Clarendon* v. *St. James,* 10 Com. Bench, 806. The inference from all these authorities and the rule laid down by them is, that if their

lands were available, or held by the plaintiffs, for *any other purpose* than simply for farming, they are not within the exemption.

2. The tax laid to pay the current expenses of the water works and the interest on the water bonds can not be recovered back by the plaintiffs. So far as the tax was laid for the first of these two objects it was clearly legal ; and it does not appear that any part of the money was in fact used to pay the interest on the bonds. Whatever part of the tax was used for the legal object the plaintiffs were justly liable to, and that part at least ought not to be recovered back.

BUTLER, J. It appears from the finding of the auditors that the lands of the plaintiffs were included in an extension of the limits of the city of Hartford, by a new or amended charter, granted by the General Assembly in 1859. It does not expressly appear at whose instance the extension was made, but, as it was a provision of a new charter then granted, it is to be presumed that it was at the request of the city. It also appears expressly and by implication, that in fixing the new and extended lines of the city, *vacant and farm lands* were included, and that the General Assembly found that such lands would not be materially benefited by the extension, and judged it equitable and just that they should be exempted from full city taxation, until otherwise appropriated. And irrespective of the presumed finding of the legislature on the facts found by the auditors, the justice and equity of the exemption are apparent. The maintenance of a city watch and police, and of a fire and other departments, the grading, paving and lighting of the streets, and the exercise of the various other powers and privileges granted by the charter, necessarily require a heavy taxation ; and the benefits which they confer enure mainly to those who own property situated in the older and densely populated parts of the city, occupied for residences or business purposes, and not immediately or to any material extent to those who live on the confines of the city and are owners of the kind of property exempted by the act.

These are the principal facts of the case ; and we know of

no principle of law which requires us to apply or would justify us in applying to the act, any strict and rigid rule of construction which would tend to deprive the plaintiffs of the equity which the General Assembly recognized and intended to protect, and to which the city assented by the acceptance of the charter.

The case is not like the class of cases cited at the bar and relied upon by the defendants. Those cases, with an exception or two which are somewhat but not authoritatively analogous to this, involved general exemptions from *all* those public taxes which, as a common and necessary burden, should be imposed upon all; exemptions which were mere *gratuities,* and unjustifiable except upon the ground that they were intended to promote specially some public and beneficent object; and which ought therefore to be subjected to a strict construction, and carefully confined within the limits and to the purpose intended. But this case is one of special and limited exemption from taxation by a particular local corporation, which sought by legislative aid to extend its limits, and embrace persons with their property, who, for aught that appears, were averse to the extension, and who but for the exemption would immediately become liable to a full proportionate share of corporate taxation, without a common or equivalent interest in the benefits procured by it. And it is simply an equitable provision in a solicited and accepted legislative grant, required and inserted for the protection of those who would otherwise be injuriously and unjustly affected by it.

Construing the provision in question then by the ordinary rule recognized by this court—" according to the apparent intention of the legislature which enacted it, gathered from the language used in connection with the subject and purpose of the law,"—we have no difficulty in determining that the General Assembly intended to exempt lands situate and used like the fifth, sixth, seventh and eighth tracts of the plaintiffs; and that the special facts found by the auditors are not inconsistent with their general conclusion.

Nor should we come to a different result if we attempted to

apply the strict rule of construction contended for by the
defendants.    That rule like all others must yield to the clear
intention of the legislature sufficiently expressed; and the im-
port of the language here is too clear to admit of the criticism
or construction claimed, whether regarded by itself or in con-
nection with the subject and purpose of the law.

It is the principal *purpose* of farming to *raise farm crops;*
and land that is used or occupied for, or appropriated to, no
other *practical purpose* than to raise farm crops upon it, is
*exclusively used* for a farming purpose ; and it is not easy to
conceive of any other language or terms which the General
Assembly could have employed, more appropriate to express
an intention to exempt lands which were not in *practical use*
for building or other business purposes, and were in *practical
use* for a farming purpose.    Nor is there any thing in the pur-
pose and object of the act which can qualify the plain import
of the language.    The object of the statute was to include
within the territorial limits of the city a large additional tract
of land.    When so included it would be immediately subject
to corporate taxation, but would not all be materially bene-
fited by the corporate government and privileges.    It was the
purpose of the exemption to relieve ít, to the extent which it
would not be benefited, from the burden which had no equiv-
alent.    What land was it that in the exercise of common
sense we must suppose the General Assembly found ought to
be thus equitably exempted ?    Not that which was occupied
by buildings and for places of residence, for to some extent
the owners and occupants would doubtless be benefited.    Nor
land which was occupied for business purposes, for it may
well have been assumed that such business would partake in
some material degree of the benefits and enjoy the protection
afforded to the business interests of the city ; and it obviously
was not practicable to measure the degree of protection
afforded to buildings or business, and discriminate by a sliding
scale in favor of those who lived at a distance from the center
and against those who lived nearer to it.

But land which was *vacant*, and furnished *no income*, could
derive no material *practical* protection or benefit from the ex-

tension of the jurisdiction of the city over it. And so of land which was used for no *practical purpose* except to raise farm crops, and from which *no income* was derived except the income derived from such practical use.

It is claimed that the tracts mentioned, though used for farming purposes, were not so used "exclusively," for that the special facts found by the auditors show that they were all one tract originally; that the plaintiffs separated them by streets in order to sell them for building lots, and that they were holden by them for that purpose at prices largely exceeding their value for farming purposes; and that, by the rule of strict construction deducible from the authorities cited, they were *available* and *held* for another purpose than farming, and therefore not within the exemption. But we think it would require something more than a strict construction of the law, and indeed a strained and unauthorized construction of it, to sustain the claim of the defendants. Lands *must* be *holden* by the owner—they may or may not be *used*. The intention or expectation with which a man holds lands, is something invisible, an idea or contemplation of the mind, and can not qualify the holding so as to constitute it in any sense *a use*. A man may hold land for present or future sale for building purposes which is *vacant*; or while practically the "use and occupation" are enjoyed by himself or a tenant or a squatter; and for farming, or other purposes. The General Assembly who enacted the law were practical men and intended to make a practical and practicable law, and they did not regard the speculative value, but the *practical use*, and the practical benefit which would accrue to *that use*, and, as sensible men, they knew that the land would not be worth any more to raise farm crops upon or be benefited for that purpose. The *practical use* of land is something which can be known and made a safe rule of taxation or exemption. It always has been and will be regarded in assessing property, and until recently was a basis of discrimination in general taxation. But *mere purpose*, qualifying the holding of lands by the owner, can furnish no practical or practicable guide or rule for either. That purpose can never be known or proved with certainty.

Men may contemplate it, and one man may publish it by language, another by conduct ; others may contemplate but conceal it, and all may change or deny it.

Nor does it appear that the speculative value of the lands accrued from any *prospective* extension of the city limits, or that the General Assembly thought or had any reason to think that the speculative value would be increased by it. We do not think therefore that the Assembly, with the object and purpose which they had in view, could have intended any other rule of exemption than that which the language which they used in its plain and popular meaning imports, the observable, practical and *beneficial use* of the land, irrespective of the fact that it was or might be holden also for present or future sale for building purposes.

And we are of opinion also that the tax imposed in part for the purpose of paying interest on the water bonds was contrary to a provision of the charter and illegal. It is of no importance that it does not appear that it was actually expended for that purpose. The objection reaches to the imposition of the tax, and that being illegal the defendants can not retain it.

We therefore advise the superior court to render judgment for the plaintiffs to recover of the defendants the sums of $385.20, and $20.68, amounting in the whole to the sum of $405.88, with interest from September 1st, 1862.

In this opinion the other judges concurred.