### The New Canaan Country School, Inc. *v.* Town of New Canaan

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued October 2—decided November 20, 1951

*John C. Sturges*, with whom, on the brief, was *Ira E. Hicks*, for the appellant (defendant).

*David G. Marvin*, for the appellee (plaintiff).

Jennings, J. The plaintiff runs a country day school in New Canaan. None of the pupils live at the school. It is entitled to a tax exemption on such of its property as is used exclusively for carrying out its purposes as an

educational institution. The question to be decided is whether two houses owned by the plaintiff and used solely for living quarters for some of its teachers are exempt under General Statutes, § 1761 (7). The board of assessors placed these houses in the plaintiff's list and the board of tax review refused relief. The facts are not in dispute.

The plaintiff employs forty-five teachers. This creates a serious housing problem even under normal conditions. In 1946 the housing shortage was such that it was difficult to hire teachers. Therefore, in 1947, the plaintiff purchased a house three miles from the school and used it for three of its teachers and their families. In the same year it built a house 200 yards from the school. This was used for one of its teachers and his family. The plaintiff furnishes light, heat and refuse removal and pays for the repairs, maintenance and carrying charges. Both properties are operated at a loss. They were acquired to enable the plaintiff to secure and retain teachers and for no other purpose. The occupancy of both houses is dependent upon the teachers' retaining employment in the school. The houses are necessary if the plaintiff is to secure and retain enough teachers to operate and to maintain its standards. The salaries of the faculty members residing in these two houses are adjusted to take into account the quarters furnished them. This adjustment amounts to about $80 per month for each teacher.

On these facts the court concluded that the two parcels in question are exclusively used for educational purposes as defined in the statute. The defendant claims, in effect, that the facts found do not support this conclusion.

As has been stated, it is admitted that the plaintiff is tax exempt as to facilities used exclusively in its educational program. The question then is whether the

two houses are used exclusively in the plaintiff's educational program. As applied to this narrow question, the terms of General Statutes, § 1761 (7), may be stated as follows: The real property of a Connecticut corporation organized exclusively for educational purposes and used exclusively for carrying out such purposes shall be exempt from taxation. Both conditions must be met to secure exemption.

The issue on appeal has been the cause of much litigation. Probably all of the cases cannot be reconciled. They agree in this, that "The conclusion in each of these decisions is necessarily governed by the specific facts in the individual case." *Knox College* v. *Board of Review*, 308 Ill. 160, 165, 139 N. E. 56, 35 A. L. R. 1041.

No Connecticut case has been cited or found on all fours with that at bar. *St. Bridget Convent Corporation* v. *Milford*, 87 Conn. 474, 88 A. 881, has similar features. The property of a convent school used for school purposes was held exempt. Land used as a vegetable garden to produce food for the teachers and pupils and houses occupied by the maintenance staff were held not exempt because these facilities were not used for the specific purposes of the school. This case and *Forman Schools, Inc.* v. *Litchfield*, 134 Conn. 1, 54 A. 2d 710, review the history of the statute and the relevant Connecticut cases. In two cases the property used for religious retreats was held not exempt as not exclusively used for religious purposes. *Woodstock* v. *The Retreat, Inc.*, 125 Conn. 52, 3 A. 2d 232; *Manresa Institute* v. *Norwalk*, 61 Conn. 228, 23 A. 1088; and see *Huntington* v. *Swedish Baptist Home of Rest*, 90 Conn. 504, 97 A. 860. An early Connecticut case, in construing the meaning of the phrase "used exclusively for farming purposes," held that the actual use of the land rather than the purpose of the owner was the test.

*Gillette* v. *Hartford,* 31 Conn. 351, 359; see *Vail* v. *Beach,* 10 Kan. 214, 215; *Welfare Federation of Cleveland* v. *Glander,* 146 Ohio St. 146, 180, 64 N. E. 2d 813; *St. Mary's College* v. *Crowl,* 10 Kan. 442, 450.

The statutory requirement that the use shall be exclusively for educational purposes is emphasized by General Statutes, § 1763, which provides: "The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes [under which exemption is claimed] but leased, rented or otherwise used for other purposes, shall not be exempt." Whether the property in question can be said to be "rented" or not, it is apparent that it is used exclusively for "other purposes" than the education of the pupils in the school, to wit, as residences for the teachers.

It is of some significance that in subsection 13 of § 1761 the legislature saw fit to exempt specifically "dwelling houses . . . owned by . . . any religious organization and actually used by its officiating clergyman." It is generally held that in the absence of such a specific provision the dwelling house of the clergyman is not exempt as being used exclusively for religious purposes. *People ex rel. Thompson* v. *First Congregational Church,* 232 Ill. 158, 164, 83 N. E. 536; *Congregation Gedulath Mordecai* v. *New York,* 135 Misc. 823, 826, 238 N. Y. S. 525; *Mussio* v. *Glander,* 149 Ohio St. 423, 425, 79 N. E. 2d 233; *Vail* v. *Beach,* supra; see *Matter of Finley,* 58 Misc. 639, 641, 110 N. Y. S. 71. If the General Assembly had intended to exempt dwellings owned by the school and used by the teachers as residences, it would have been very simple to insert in the section relating to schools a provision similar to that referring to parsonages.

In *Bloomington Cemetery Assn.* v. *People ex rel. Baldridge,* 170 Ill. 377, 48 N. E. 905, the statute pro-

vided (p. 379) that all lands used as graveyards or grounds for burying the dead should be exempt. The association bought a lot to serve as an entrance to the cemetery and later erected a house on it for the superintendent. Neither house nor lot was held exempt. See also *State ex rel. Administrators* v. *Board of Assessors*, 35 La. Ann. 668, 671.

In the following cases, houses used by teachers as residences but not for teaching were denied exemption: *City of Pawtucket, for Opinion*, 24 R. I. 86, 52 A. 679; *Red* v. *Johnson*, 53 Tex. 284, 288.

The principal reliance of the plaintiff is on three cases. In *State* v. *Ross*, 24 N. J. L. 497, the institution involved was the College of New Jersey, now Princeton University. The students were in residence, and the court held (p. 500): "To enable the officers to exercise the proper discipline, it was necessary that they should dwell in the proximity of the students; and be provided with apartments either in the same buildings with them, or in dwelling houses adjacent." In *Yale University* v. *New Haven*, 71 Conn. 316, 334, 42 A. 87, the court held that "the observatory buildings, the two houses furnished by the College for the officers of the observatory, [and] the adjoining land found to be reasonably necessary for the purposes of the observatory" were not taxable. In both cases it is apparent that the buildings in question were a part of the college and used for its purposes. As to the observatory, we take judicial notice of the fact that the work of observers and students is in large measure done at night and that under these circumstances the houses in question were practically a part of the observatory. See *State ex rel.* v. *Waggoner*, 162 Tenn. 172, 176, 35 S. W. 2d 389; *Burris* v. *Tower Hill School Assn.*, 36 Del. 577, 580, 179 A. 397.

The other case, *People ex rel. Clarkson Memorial*

*College* v. *Haggett,* 274 App. Div. 732, 734, 87 N. Y. S. 2d 491, affirming 191 Misc. 621, 77 N. Y. S. 2d 182, affirmed without opinion, 300 N. Y. 595, 89 N. E. 2d 882, turned on the proposition that, when a housing shortage forced a college to provide houses for its teachers if it was to maintain a teaching force, such houses were used exclusively for educational purposes. This proposition was also the main reliance of the trial court in the case at bar. We cannot assent to it. The existence of a housing shortage is irrelevant to the test of the Connecticut statute. The question is: Were the houses exclusively used for educational purposes? The answer is that they were used for no educational purpose whatever. They were convenient residences for the teachers and were used as such. In *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 88 A. 881, the produce of the gardens may have been necessary to feed the pupils, and the work of the employees was necessary to keep the school running, but it was held that neither the gardens nor the houses were being used for educational purposes.

The houses in question were not being used exclusively for educational purposes. They should not have been found exempt from taxation.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.