THE LOOMIS INSTITUTE *v.* TOWN OF WINDSOR
(14945)
(14946)

PETERS, C. J., and CALLAHAN, BORDEN, KATZ and PALMER, Js.

Argued May 24—decision released July 11, 1995

*Francis H. Morrison III*, with whom were *Joseph L. Hammer* and, on the brief, *Alex C. Geisinger*, for the appellant-appellee (defendant).

*William H. Narwold*, with whom were *Laura W. Ray* and, on the brief, *Charles D. Ray*, for the appellee-appellant (plaintiff).

PETERS, C. J. The principal issue in this tax appeal is whether the trial court properly determined that faculty houses owned by a day and boarding school were exempt from local property taxes because, in accordance with General Statutes § 12-81 (7),[1] the school used the property exclusively for carrying out its educational mission. The plaintiff, The Loomis Institute (taxpayer), filed an action in the trial court, pursuant to General Statutes §§ 12-89 and 12-119, to challenge the denial of its claimed tax exemption on certain of its real properties by the board of tax review of the defendant town of Windsor (town).[2] After a bench trial, the trial court rendered judgment for the taxpayer. The town appealed and the taxpayer cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal and the cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We conclude

[1] General Statutes § 12-81 provides in relevant part: "EXEMPTIONS. The following-described property shall be exempt from taxation . . . .

"(7) PROPERTY USED FOR SCIENTIFIC, EDUCATIONAL, LITERARY, HISTORICAL OR CHARITABLE PURPOSES. EXCEPTION. Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b) in 1965, and quadrennially thereafter, a statement on forms prepared by the secretary of the office of policy and management shall be filed on or before the last day required by law for the filing of assessment returns with the local board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. . . ."

[2] As originally filed, the tax appeal challenged the validity of assessments dated October 1, 1991. Subsequent amendments to the pleadings enlarged the taxpayer's challenge to encompass the validity of assessments dated October 1, 1992, and October 1, 1993.

that the trial court's factual findings support its legal conclusion that the taxpayer is entitled to the statutory exemption. We also reject the taxpayer's cross appeal. We therefore affirm the judgment of the trial court.

The facts are undisputed. The taxpayer operates the Loomis Chaffee School (school), a coeducational day and boarding school located in Windsor.[3] The school annually enrolls approximately 325 boarding students and 375 day students.

The property at issue in this appeal consists of twenty-five freestanding houses.[4] The school uses and maintains the houses, which are located within walking distance of the school's main campus area, primarily as residences for faculty members and their families. The school also uses the houses for counseling and entertaining students, and for housing students' parents, trustees and other school visitors.

In exchange for the right to live in the houses, faculty members must perform certain duties for the school, including study hall and dormitory supervision of boarding students, weekly visitation with boarding advisees, attendance at family style dinners with boarding students, assistance at special campus events and athletic coaching.[5] Moreover, these faculty members, unlike off campus faculty members, act in loco parentis to board-

[3] The legislature incorporated the school by a charter, which it passed by special act in 1874. The charter of incorporation grants the school a property tax exemption upon the school's compliance with the charter's terms.

[4] The taxpayer also challenged the town's tax assessment of two undeveloped parcels of land that students at the school had used for athletic events and bird watching. The trial court concluded, on the basis of these undisputed facts, that the parcels were exempt from taxation pursuant to § 12-81 (7). On appeal, the town does not challenge this conclusion.

[5] Other faculty members who perform similar boarding duties and who live off campus in their own houses receive approximately $10,000 per year in additional compensation from the school.

ing students and must be available on a twenty-four hour basis to take care of any problems that may occur at the school.

Occasionally, the school rents out its hockey rink, swimming pool, playing fields and dormitories. Dormitories are rented to house summer camp students, when not in use by boarding school students. The school derives no profit from the rental of its dormitories and athletic facilities. The rental of these facilities allows the school to cover overhead costs, to utilize maintenance staff effectively and to present the school to prospective students. The rentals do not interfere with the school's educational function.

On its quadrennial form filed for the tax periods at issue in this appeal; see General Statutes § 12-81 (7) (b); the taxpayer identified the school's purpose as educational. The taxpayer also answered "yes" to a question that asked whether all of the school's property was used exclusively for its identified purpose. The taxpayer qualified the latter response only by stating that the school leased a portion of its property for farming purposes.

On the basis of these facts, the trial court came to the following conclusions. First, it concluded that the taxpayer had used the houses exclusively for carrying out an educational purpose and that the property was therefore exempt from taxation pursuant to § 12-81 (7). Second, it concluded that the houses continued to be exempt from taxation pursuant to the school's charter of incorporation. Third, it concluded that the taxpayer appropriately had responded "yes" to the question that asked whether all of its property was used exclusively for its identified purpose and, therefore, had filed an accurate quadrennial form. Accordingly, the trial court ordered the town to remit $134,134.99 to the taxpayer for tax payments made attributable to the

exempt property.[6] The trial court also awarded the taxpayer $608.20 in costs and $31,354.51 in interest pursuant to General Statutes § 52-192a,[7] although it refused to award the taxpayer interest pursuant to General Statutes § 37-3a.[8]

[6] The trial court's judgment included the remittal of taxes assessed by the town upon the two undeveloped parcels of land. See footnote 4.

[7] General Statutes § 52-192a provides in relevant part: "OFFER OF JUDGMENT BY PLAINTIFF. ACCEPTANCE BY DEFENDANT. COMPUTATION OF INTEREST. (a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment.' Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. . . ."

[8] General Statutes § 37-3a provides in relevant part: "RATE RECOVERABLE AS DAMAGES. Except as provided in sections 37-3b, 37-3c and 52-192a,

In its appeal, the town claims that the trial court improperly: (1) determined that the houses were tax exempt pursuant to § 12-81 (7) and pursuant to the school's charter of incorporation; and (2) awarded the taxpayer interest pursuant to § 52-192a. In its cross appeal, the taxpayer claims that the trial court improperly denied its claim for interest pursuant to § 37-3a. We find none of these claims persuasive.

I

We first review the trial court's conclusion that the houses were exempt from taxation pursuant to § 12-81 (7). Significantly, the town does not challenge the trial court's findings of fact. It claims, however, that those findings are insufficient, as a matter of law, to establish that the houses were "used exclusively for carrying out" an educational purpose as that language is used in the statute. We disagree.

Real property is eligible for a tax exemption from local property taxes if the property meets two requirements established by § 12-81 (7). The statute conditions tax exemption on a showing that the corporation that owns or holds the property in trust: (1) is "organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes"; and (2) uses the property "exclusively for carrying out one or more of such purposes." General Statutes § 12-81 (7); see *Red Top, Inc.* v. *Board of Tax Review*, 181 Conn. 343, 350, 435 A.2d 364 (1980); *New Canaan Country School, Inc.* v. *New Canaan*, 138 Conn. 347, 349, 84 A.2d 691 (1951).

The town does not contest that the taxpayer is a properly constituted corporation for purposes of § 12-81 (7).

interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

Accordingly, the sole issue before us is whether the houses were used exclusively for carrying out an educational purpose.

The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. *Common Fund* v. *Fairfield*, 228 Conn. 375, 380, 636 A.2d 795 (1994); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990). As applied to educational institutions, however, § 12-81 (7) "does not grant an exemption in the technical sense. Rather it merely states a rule of nontaxability. Consequently, it does not come within the rule that tax exemption statutes must be construed strictly against the taxpayer." *Arnold College* v. *Milford,* 144 Conn. 206, 210, 128 A.2d 537 (1957); *St. Bridget Convent Corp.* v. *Milford,* 87 Conn. 474, 478, 88 A. 881 (1913); *Yale University* v. *New Haven,* 71 Conn. 316, 329-30, 42 A. 87 (1899); accord *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 374, 279 A.2d 561 (1971).

Furthermore, this court consistently has interpreted broadly the statutory requirement that property be "used exclusively for carrying out" an educational purpose. "It is well established that the exemption granted [under § 12-81 (7)] is not limited to the buildings used for educational purposes in the limited and restricted sense. It extends to all of the property the use of which is incidental to education, including campuses and playing fields. . . . The real test is whether the property is sequestered for educational purposes and whether the corporation, or any person, can secure any profit from its operations." (Citations omitted.) *Arnold College* v. *Milford,* supra, 144 Conn. 210; *Red Top, Inc.* v. *Board of Tax Review,* supra, 181 Conn. 352–53.

These precedents illuminate the town's claim that the taxpayer has failed to meet the requirement of § 12-81 (7) that its property be used exclusively for carrying out an educational purpose. Our case law establishes that the statutory requirement can be satisfied by a use of the property that is incidental to education. See *Red Top, Inc.* v. *Board of Tax Review,* supra, 181 Conn. 352-53; *Arnold College* v. *Milford,* supra, 144 Conn. 210.

The determination of whether property is used exclusively for carrying out an educational purpose " 'is necessarily governed by the specific facts in the individual case.' " *New Canaan Country School, Inc.* v. *New Canaan,* supra, 138 Conn. 349. In this case, the trial court had ample factual support for its conclusion that the taxpayer had met its burden of establishing that the houses were being used exclusively for carrying out an educational purpose. In light of the unchallenged factual record, we agree with this conclusion. See *Red Top, Inc.* v. *Board of Tax Review,* supra, 181 Conn. 350-54 (rowing camp used as training facility for student crews and containing docks, boat houses, caretaker facilities and buildings for housing and feeding crews and support personnel exempt from taxation); *Arnold College* v. *Milford,* supra, 144 Conn. 207-10 (college-owned gymnasium, playing field, chapel and cottage used as residence for caretaker exempt from taxation).

The town urges that *New Canaan Country School, Inc.* v. *New Canaan,* supra, 138 Conn. 347, compels a different result, but we are persuaded that *New Canaan* is distinguishable. There we held taxable two houses owned by a day school and used solely as residences for some of the school's teachers. Id., 348. In *New Canaan,* the day school provided the houses solely in response to a housing shortage and made no claim that they served any educational purpose whatsoever. Id., 352. Here, in contrast, although the houses were resi-

dences for faculty members and their families, the trial court found that the taxpayer used the houses purely to effectuate its educational purposes. Specifically, the court found that having faculty members living on campus served the educational purpose of providing counseling and other services for the school's boarding students. Cf. *Hartford Hospital* v. *Hartford*, supra, 160 Conn. 371–72, 377–78 (apartment building that was owned by hospital, located near hospital premises, used to house hospital interns and residents and necessary for hospital to perform services effectively was used exclusively for hospital purposes and therefore exempt from taxation).

The town further claims that the taxpayer should not be allowed to claim the benefits of § 12-81 (7) because it inaccurately answered "yes" to a question on the quadrennial form that inquired whether all of the school's property was used exclusively for its educational purposes. The trial court found, however, that the taxpayer had filed an accurate quadrennial form, and we agree. The quadrennial form required the taxpayer to disclose whether the school's property was used exclusively for its own educational purposes. Although the school's dormitories and athletic facilities were rented out to third parties, the court found that such rentals did not interfere with, but actually furthered, the school's educational purpose. Cf. *West Hartford* v. *Connecticut Fair Assn.*, 88 Conn. 627, 633, 92 A. 432 (1914) (land owned by agricultural society and rented to third parties found exempt from taxation where rentals furthered society's purposes); *First Unitarian Society* v. *Hartford*, 66 Conn. 368, 375–76, 34 A. 89 (1895) (building owned by ecclesiastical society and rented to third parties found exempt from taxation as building exclusively occupied as church where revenues from rentals used to maintain religious ser-

vices in building and rentals did not interrupt occupation of building as church).

In light of the trial court's unchallenged factual findings, we affirm its conclusion that the houses were exempt from taxation pursuant to § 12-81 (7). We therefore need not address the trial court's alternate holding that the taxpayer also was entitled to a tax exemption under the terms of its charter.[9] The town agreed at oral argument in this court that it could not prevail on the taxability issue if we affirmed on either of the grounds on which the trial court relied.

## II

We next consider the parties' competing claims regarding the trial court's award of interest. After the trial court rendered judgment for a tax refund for the taxpayer, the taxpayer sought offer of judgment interest pursuant to § 52-192a and overlapping prejudgment interest pursuant to § 37-3a. Pursuant to § 52-192a (b), the trial court awarded the taxpayer interest at the statutory rate of 12 percent per year from the date that the taxpayer had filed its tax appeal in the trial court to the date of the court's judgment. The trial court, however, denied the taxpayer additional prejudgment interest pursuant to § 37-3a.

The town claims that the trial court lacked the authority to award the taxpayer interest pursuant to § 52-192a, because, according to the town, a tax appeal does not constitute a "civil action" under the statute. The taxpayer claims that the trial court improperly failed to award it interest pursuant to § 37-3a. We reject both claims and affirm the trial court's award.

The following additional facts are relevant to these claims. The taxpayer filed its tax appeal with the trial court on April 22, 1992. On October 4, 1993, the tax-

---

[9] See footnote 3.

payer filed an offer of judgment pursuant to § 52-192a (a) in the amount of $134,134.99. On October 25, 1993, the town rejected the taxpayer's offer of judgment.

Section 52-192a (b) requires a trial court to award interest to the prevailing plaintiff from the date of the filing of a complaint to the date of judgment whenever: (1) a plaintiff files a valid offer of judgment within eighteen months of the filing of the complaint in a civil complaint for money damages; (2) the defendant rejects the offer of judgment; and (3) the plaintiff ultimately recovers an amount greater than or equal to the offer of judgment. See *Lutynski* v. *B. B. & J. Trucking, Inc.*, 31 Conn. App. 806, 812, 628 A.2d 1 (1993), aff'd, 229 Conn. 525, 528, 642 A.2d 7 (1994). The town argues that the statute does not apply to a tax appeal because, according to the town, such an appeal is not a "civil action . . . seeking the recovery of money damages . . . ." General Statutes § 52-192a (a). We disagree.

Although the General Statutes contain no generic definition of the term "civil action," the provisions of our Practice Book fill this gap. The section in the Practice Book that directly implements § 52-192a (a) mirrors the usage of "civil action" that is found in the statute. See Practice Book § 346. Practice Book § 256 expressly provides, furthermore, that, "[f]or purposes of these rules, administrative appeals are civil actions [except for purposes of General Statutes §§ 52-591, 52-592 and 52-593]." Tax appeals fall within the Practice Book's definition of "administrative appeals." Practice Book § 255.[10] Accordingly, the taxpayer's tax appeal was a "civil action" under Practice Book §§ 256

---

[10] Practice Book § 255 provides in relevant part: "For purposes of these rules, administrative appeals are those appeals taken pursuant to statute from decisions of . . . boards . . . of any political subdivision of the state . . . ."

and 346, and the trial court properly awarded interest to the taxpayer pursuant to § 52-192a.[11]

In contrast to § 52-192a, § 37-3a permits the recovery of interest in civil actions "as damages for the detention of money after it becomes payable." "We have construed the statute to make the allowance of interest depend upon whether the detention of money is or is not wrongful under the circumstances. *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 275, 287 A.2d 374 (1971). The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court. *Bertozzi* v. *McCarthy*, 164 Conn. 463, 467, 323 A.2d 553 (1973)." (Internal quotation marks omitted.) *Newington* v. *General Sanitation Service Co.*, 196 Conn. 81, 90, 491 A.2d 363 (1985). The decision to award interest " 'is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.' " *Cecio Bros., Inc.* v. *Feldmann*, supra, 275.

The trial court did not explain why it had refused to award the taxpayer interest pursuant to § 37-3a, other than to state, in response to the taxpayer's motion for articulation, that such interest had been denied "in [the court's] discretion." Several circumstances support our affirmance of the court's exercise of discretion in this case. There is no evidence that the town acted maliciously or in bad faith toward the taxpayer. See *O'Hara*

[11] The town also claims that the trial court improperly awarded interest pursuant to § 52-192a because, the town claims, the taxpayer actually sought equitable relief rather than money damages. The town, however, has devoted only one sentence to this issue and has neither cited any authority nor provided any analysis to support it. The issue, therefore, is not sufficiently briefed to warrant our consideration. See Practice Book § 4065; *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 676, 638 A.2d 6 (1994); *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 482, 582 A.2d 190 (1990); *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 732, 557 A.2d 116 (1989).

v. *State*, 218 Conn. 628, 644, 590 A.2d 948 (1991). Moreover, having already awarded the taxpayer mandatory offer of judgment interest, the trial court might reasonably have concluded that a further award of interest pursuant to § 37-3a would not have been equitable. Finally, the taxpayer did not avail itself of the opportunity to seek appellate review of the trial court's refusal to articulate the reasons for its denial of interest pursuant to § 37-3a. In these circumstances, we are not persuaded that the trial court abused its discretion in failing to award the taxpayer interest pursuant to § 37-3a in addition to interest awarded pursuant to § 52-192a.

The judgment is affirmed.

In this opinion the other justices concurred.