[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed this appeal under General Statutes §§ 12-89 and 12-119 from the defendant's denial of a property tax exemption for real property located at 68 Harrison Lane in Bethlehem. The plaintiff contends that the property is used exclusively for educational purposes and is therefore exempt from taxation under § 12-81 (7) of the General Statutes.[1] The defendant town claims that the plaintiff has failed to prove such an exclusive use. In deciding this question, the court hears the matter in a trial de novo. Xerox Corp. v. Board of Tax Review,240 Conn. 192, 204, 690 A.2d 389 (1997); After considering the evidence offered at trial, including testimony and exhibits, and the written stipulation of the parties, the court sustains the plaintiffs appeal.
 I
After acquiring the property in February 1996, the school sought property tax exemption from the town pursuant to General Statutes § 12-81 (7). When the town's board of assessors continued to assess property tax, the plaintiff filed a timely appeal to the town's board of assessment appeals. After a hearing before that board, the board sent plaintiffs counsel a letter that this court can only characterize as cryptic.[2] It informed the plaintiff that "[t]ax exemption status is solely up to the Assessor;" that it had "reviewed" the decision of the CT Page 458 Assessor; and that it took "no action" on plaintiffs request. Plaintiff then filed this appeal to Superior Court.
The question of whether sundry pieces of real estate owned by charitable, educational, and religious institutions are exempt from municipal real estate taxation is one that the courts of this state often consider. See., e.g., Loomis Institute v.Windsor, 234 Conn. 169, 661 A.2d 1001 (1995); New Canaan CountrySchool, Inc. v. New Ganaan, 138 Conn. 347, 349, 84 A.2d 691
(1951) and cases cited therein. In resolving these disputes, the Supreme Court has repeatedly advised that "[t]he determination of whether property is used exclusively for carrying out an educational purpose "is necessarily governed by the specific facts in the individual case." Loomis Institute v. Windsor,supra, 234 Conn. 177; New Canaan Country School v. New Canaan,supra, 138 Conn. 349. The key test for determining this question is "whether the property is sequestered for educational purposes and whether the corporation, or any person, can secure any profit from its operations." Loomis Institute v. Windsor, supra, 176. Cases considering the taxability of real property owned by educational institutions do not apply the general rule of construction in taxation cases that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption:
 As applied to educational institutions, however, § 12-81 (7) "does not grant an exemption in the technical sense. Rather it merely states a rule of nontaxability. Consequently, it does not come within the rule that tax exemption statutes must be construed strictly against the taxpayer.
Id.
The Woodhall School is a small private school serving a maximum of 42 resident students, and one or two non-resident students. The parties have stipulated that it is a bona fide educational institution entitled to tax exemptions pursuant to General Statutes section 12-81 (7) for real property it owns that is used exclusively for carrying out one or more of its educational purposes. The school's mission is to provide an individualized and supportive program of instruction for the students it seeks to serve: Young men between the ages of 14 and 19 years who have not succeeded in traditional educational settings and have come to the school to break that cycle of failure. The students present a variety of problems — identified by the head of school CT Page 459 as including behavioral problems, neurological impairments, students with high cognitive and low social skills and vice-versa. Because of the many needs of the students, the school's faculty and staff must be closely integrated with and involved in the lives of the students to help them reach the school's goals.
The property in question contains a 1.65-story frame house of approximately 1900 square feet, with a two-car garage and a large field of approximately three acres in the back of the house. It serves as the residence for the Head of School for The Woodhall School. The house itself has five bedrooms, two bathrooms, a small kitchen, a combined living-dining room, a den, and an exterior deck. Formerly owned by Sally Campbell Woodhall, the head of school for the plaintiff, and used by her as a residence since 1983, the property in dispute has been owned by the plaintiff since Woodhall conveyed the property to the school in 1996.
Although each such case is decided on the merits of its own facts, two prior cases considering similar questions provide guidance here. In New Canaan Country School, Inc. v. New Canaan,
the court held that merely providing faculty housing was not a sufficient "educational purpose" to qualify for tax exemption. In that case, a shortage of housing had made it difficult for a school to hire teachers. School officials acquired two properties for the sole purpose of enabling the school to hire and retain teachers. In rejecting the claim for a tax exemption, the court stated:
 The existence of a housing shortage is irrelevant to the test of the Connecticut statute. The question is: Were the houses exclusively used for educational purposes? The answer is that they were used for no educational purpose whatever. They were convenient residences for the teachers and were used as such.
New Canaan Country School, Inc. v. New Canaan, supra,138 Conn. 352. In Loomis Institute v. Windsor, on the other hand, the court held that real property used primarily as faculty housing was tax exempt because "having faculty members living on campus served the educational purpose of providing counseling and other services for the schools boarding students." Supra, 234 Conn. 178. Thus the court here must evaluate whether the evidence shows a mere residential use of the property, or that the residential and other uses also serve direct educational purposes beyond that usage. CT Page 460
The evidence before the court indicates that the property at 68 Harrison meets the criteria for tax exemption. At their simplest, the facts here parallel those of the Loomis case, where the court held that real property occupied by faculty members were tax exempt:
 The school uses and maintains the houses, which are located within walking distance of the school's main campus area, primarily as residences for faculty members and their families. The school also uses the houses for counseling and entertaining students, and for housing students' parents, trustees and other school visitors.
 In exchange for the right to live in the houses, faculty members must perform certain duties for the school, including study hall and dormitory supervision of boarding students, weekly visitation with boarding advisees, attendance at family style dinners with boarding students, assistance at special campus events and athletic coaching. Moreover, these faculty members, unlike off campus faculty members, act in loco parentis to boarding students and must be available on a twenty-four hour basis to take care of any problems that may occur at the school.
Loomis Institute v. Windsor, supra, 234 Conn. 172-173.
Other than evidence as to who maintains the property at 68 Harrison (about which the evidence is silent), all of the other facts from the Loomis case are also present here: The property here is only 1 mile from the main school campus, a three to four minute walk. In exchange for the right to live there, the head of school must be officially at the school from 8:00 a.m. until 7:00 p. m. In addition, the head of school is, in the words of the school's dean of faculty, "always on call." The head of school is required to be available to respond to emergency situations, address student misconduct, and be constantly available to provide care and nurture to the students. This responsibility dictates that her residence be close to the school. The evidence produced at trial is more than sufficient to establish that the head of school, along with faculty members who have on-campus apartments, serves "in loco parentis" for the students. The head of school keeps the home open and available to students day and night for formal and informal counseling. Woodhall testified that she often meets with students at her house, and at all times of day and night. Just days prior to trial, for example, three students came to the house at 11:00 p. m. to talk to her about a CT Page 461 problem worrying them. As an example of the accessibility of the property to students, the Student Handbook lists the phone number for the head's residence among the "frequently used telephone numbers" provided to students.
The evidence satisfies the court here that the school uses the property in dispute not just as a residence for an employee, unlike the housing provided to faculty in New Canaan CountrySchool, Inc. v. New Canaan. Having the head of school reside there enables, and is necessary for, her to carry out her duties; further, the property itself has many independent uses. In addition to providing a residence for the head of school close to the academic and student living areas on campus so that she can carry out her "in loco parentis" duties, the school uses the 68 Harrison property for counseling and entertaining parents, for housing parents and other visitors, and for numerous campus events. At spring and fall parents weekends, the head's residence hosts wine and cheese parties for parents, a reception, and the fall "silent auction" run by parents to raise funds for the school. The head of school holds various administrative and faculty committee meetings and faculty training sessions there periodically, hosts a Monday night meeting with student leaders there each week of the school year, holds two fall school parties there, and occasionally the board of directors meets there. Both the head of school and the school's development officer use the house to hold development committee meetings and for other development purposes. Faculty members use the house for faculty gatherings. Students daily engage in recreational activities in the large field in the back yard of the Harrison property. Contrary to the defendant's characterization of the evidence as showing only "occasional" use of the property for school purposes, the court finds the school uses the property frequently for varied educational purposes.
There is no evidence here that the plaintiff uses the property for anything other than helping the school carry out its educational mission. Nor is there any evidence that the school or any individual uses the property for any profit-making purposes. The evidence as a whole thus persuades the court that the plaintiff uses the property in question exclusively for educational purposes.
While the evidence convincingly establishes that the plaintiffs use of the property qualifies for a tax exemption, the court will, in fairness to the defendant, address the various arguments CT Page 462 made by the defendant for denying a tax exemption for the property at 68 Harrison Lane. First, the town states that a physical inspection of the property by Carolyn Nadeau, the chairperson of the town's board of assessors, found no sign of educational activities taking place. For example, Nadeau testified that on her visit she saw no chalk boards, easels or anything else to indicate educational usage. She saw nothing to indicate anything other than a family dwelling and testified that the interior looked like its resident had gotten up and gone to work.
The plaintiff does not claim, however, nor need it do so, that it uses the property to provide instruction. As the Loomis case teaches, using property exclusively for carrying out educational purposes does not mean that instruction must occur on the property:
 It is well established that the exemption granted [under § 12-81 (7)] is not limited to the buildings used for educational purposes in the limited and restricted sense. It extends to all of the property the use of which is incidental to education, including campuses and playing fields. . . . The real test is whether the property is sequestered for educational purposes and whether the corporation, or any person, can secure any profit from its operations.
 . . . .Our case law establishes that the statutory requirement can be satisfied by a use of the property that is incidental to education.
(Citations and interior quotations omitted.) Loomis Institute v.Windsor, supra, 234 Conn. 176-177. Simply because property provides a residence for a school's faculty or staff member will not defeat a tax exemption if, as here, doing so, combined with other uses of the property, carries out the school's educational purposes beyond providing mere housing.
The town also asks the court to draw an adverse inference from the school's failure to provide evidence of the contractual arrangement allowing Woodhall to live in the house. In view of the testimony presented to the court, however, the court finds the lack of evidence as to any contractual arrangement between Woodhall and the School to be insignificant. The court finds convincing and credible the testimony of the head of school, the development director, and the dean of students that the CT Page 463 activities that they testified were carried out at the head's residence did in fact occur as they described them and that the duties of the head of school are as they described them at trial. There was no credible testimony suggesting otherwise,[3] unlike the affidavits submitted by the defendant in opposing summary judgment, which had claimed that the property "is too small to be used" for some of the purposes described by plaintiffs' witnesses and in fact was not used for some of those purposes.[4] From the evidence, the court concludes that the property is, in fact, "sequestered for educational purposes."
Second, the defendant claims that certain statements made out of court defeat the plaintiff's claim. The town offered testimony that Woodhall, in talking with Nadeau, referred to the property as "my home" and "my personal residence," and also said that "this is where I live" and that the property "served as my house." The court does not find such comments to defeat plaintiffs appeal. In fact, they are all true — while Woodhall serves as head of school, the property is her home and the building serves as her personal residence. The effect of her decision to deed the property to the school three years ago, however, is not just that, under the evidence here, the property is now tax-exempt. The transfer of ownership also means that when she no longer serves as head of school, the property, if it maintains its current function, will cease to be her home or serve as her house. As presently used, the property is "the head's residence," to house whoever serves in that capacity.
The town also offered evidence that the plaintiffs head of maintenance said there were no other buildings to inspect when the fire marshal asked, after completing last year's inspection of the main campus classroom building, library, administration building, dormitories, and various other rooms, if there were any other buildings to be inspected. The court accepts the testimony of the fire marshal that the school had held the head of maintenance out as the person designated to escort him on the annual inspection. Thus, the head of maintenance would have been a property person to ask such a question. One can only speculate why he answered as he did. But this lone statement does not have the effect of a conclusive admission as to tax-exemption. It does not overcome all of the other evidence offered at trial establishing the many uses the school makes of the property at 68 Harrison Lane.
Third, Nadeau's testimony may offer another clue as to why the CT Page 464 town denied the plaintiffs claim for a tax exemption: She testified that the change in the name of legal owner of the property, when Woodhall transferred the property to the school, "doesn't indicate change in use." That statement may be true. The property at 68 Harrison may have had the exact same usage before title transferred to the school, but despite that usage did not then qualify for a tax exemption because a charitable institution did not own it. The school's acquisition of title removed that barrier to tax exempt status, thereby requiring the town to consider the school's use of the property in determining whether to grant tax exempt status.
The evidence offered by the defendant suggests another possible reason that the town denied the tax exemption, although Nadeau said this fact did not enter into the Assessors' original decision. The house at 68 Harrison Lane apparently may not meet municipal fire code regulations for a building that carries out the many functions testified to. There was no evidence that the plaintiff had been cited for failure to comply with the fire code, much less had been ordered to cease any of the activities described above for non-compliance with the fire code. Those issues, however, do not, at present, affect taxability.
Based on the foregoing, the court concludes that the plaintiff taxpayer here has, since acquiring the property in question, used it exclusively for carrying out educational purposes and that the property is therefore exempt from taxation pursuant to §12-81 (7). Accordingly, the court finds that plaintiff was aggrieved by the decision of the town denying the school's request for tax exemption and sustains the plaintiffs appeal under General Statutes § 12-89. The court further finds that, by imposing and collecting tax on tax exempt property, the town levied an illegal tax; and accordingly the court grants the relief described below pursuant to General Statutes § 12-119.
 II
Having determined that the property qualifies for tax exempt status, the court must now consider the parties' various claims regarding remedies. The court grants plaintiffs request to amend its application for relief, dated October 12, 1999, adding a fourth year of tax assessments to the relief sought by the plaintiff. The court orders the town to remit to the plaintiff all sums paid by the plaintiff as taxes on the property at 68 Harrison for the grand lists of 1996 through 1999. The court CT Page 465 further orders the town to remove the property from the list of assessed properties and not subject it to further taxation absent a change in usage or other cause warranting loss of exempt status.
The court further finds that, pursuant to General Statutes §§ 37-3a and 12-119, it is appropriate to award interest of ten per cent per annum on all taxes the plaintiff paid on the property from the date of such payments.[5] Although the town may not have acted maliciously or intentionally to deprive the school of the tax exemption, the town's actions nonetheless had the effect of wrongfully depriving plaintiff of the use of its moneys. See Loomis Institute v. Windsor, supra, 234 Conn. 181. Furthermore, exercising its authority under § 12-119, the court finds that justice and equity require the town to pay a reasonable rate of interest from the time the taxpayer made its payments on the exempt property. Pursuant to General Statutes §§ 52-257 (b) and (c) and 12-119, the plaintiff is also entitled to fees and costs permitted therein.[6]
On the November 25, 1998, plaintiff filed an offer of judgment seeking a cash refund of $6,158.72 for its payment of taxes on the 1996 and 1998 grand lists "together with interest at the rate of ten percent (10%) per annum and costs as provided by law." Under the court's judgment here, the plaintiff has recovered an amount equal to or greater than his offer of judgment. Accordingly, pursuant to General Statutes § 52-192a (b), the court here awards interest at the rate of twelve percent per annum from the date plaintiff filed this appeal,[7] along with a reasonable attorney's fee in the amount of $350. The award of interest under § 52-192a is not cumulative to the ten percent awarded pursuant to §§ 37-3a and 12-119. The total interest allowed is ten percent per annum from the date that the plaintiff paid a particular tax for a specific year until the date the appeal was filed, after which total interest allowed is twelve percent per annum.
 III
Accordingly, the court concludes that the property is exempt from taxation pursuant to § 12-81 (7). The court sustains plaintiffs appeal under § 12-89, enters judgment for the plaintiff pursuant to §§ 12-89 and 12-119, orders the defendant town to remit all taxes paid by the plaintiff on the subject property and to remove it from the Grand List of taxable CT Page 466 property, and awards interest, costs, fees, and attorneys fees to the plaintiff as indicated above.
SO ORDERED
BY THE COURT
BY:
Stephen F. Frazzini, Judge of the Superior Court