PROMOTING ENDURING PEACE, INC. *v.* CITY OF
MILFORD
(AC 24600)

Dranginis, DiPentima and Peters, Js.

Argued March 23—officially released May 25, 2004

*Matthew B. Woods*, with whom, on the brief, was *Cynthia C. Anger*, assistant city attorney, for the appellant (defendant).

*Richard L. Gross*, for the appellee (plaintiff).

*Opinion*

PETERS, J. In this tax appeal, a charitable organization claims that it is entitled to an exemption from a local property tax for property that it uses as its headquarters and as the residence of its executive director. Charitable organizations, although exempt from federal and state income taxes, must pay local property taxes unless their property is used "exclusively for scientific, educational, literary, historical or charitable

purposes . . . ." General Statutes § 12-81 (7).[1] The trial court held that the executive director's duties in the service of the charitable organization were so interwoven with the organization's needs that her residence at the property did not disqualify the property from being tax exempt. We disagree and reverse the judgment of the court.

On September 24, 2001, the plaintiff, Promoting Enduring Peace, Inc., a charitable organization, applied for a tax exemption for its property located at 112 Beach Avenue in Milford. It claimed that the property was used exclusively to carry out the plaintiff's charitable purposes. This claim was rejected by the Milford tax assessor and its board of assessment appeals. Pursuant to General Statutes § 12-89, the plaintiff then appealed to the trial court. The defendant is the city of Milford.

After a de novo evidentiary hearing, the trial court rendered a judgment in favor of the plaintiff.[2] It held that the plaintiff had met its burden of establishing that its property was used exclusively for charitable purposes and therefore was entitled to a tax exemption. Accordingly, the court ordered the defendant to reimburse the plaintiff in the amount of $9076.75.

[1] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) Property used for scientific, educational, literary, historical or charitable purposes. . . . Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (A) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes . . . ."

[2] Although the appeal originally was for the 2001 tax year, it subsequently was amended to include the 2002 tax year. The plaintiff paid taxes for the 2001 tax year and sought a refund of this payment. The plaintiff did not pay the taxes for the 2002 tax year.

In its appeal, the defendant asks us to reverse the judgment of the trial court on two grounds. It claims that the court misconstrued the exclusivity requirement in § 12-81 (7) and that it misapplied the exclusivity requirement under the circumstances of this case. The plaintiff asks us to affirm the judgment. Although we disagree with the defendant's first claim, we agree with its second claim and therefore reverse the judgment of the trial court.

The underlying facts are undisputed. The plaintiff is a not-for-profit charitable organization that, since its incorporation in 1958, has been engaged in promoting worldwide peace and justice. It conducts overseas tours, hosts conferences and speaking tours and presents its Ghandi award to luminaries around the world.

With the exception of a brief interlude from 1998 to 1999, the plaintiff has used its Milford property as its main office for many years. Since February 1, 2001, its executive director, Yael Martin, and her husband, Bruce Martin, have resided there.[3] The property is so configured that no floor is devoted exclusively either to professional or to personal use.

On a daily basis, the property is used as a planning center for the plaintiff's many activities, including fundraising, but the plaintiff's programs are conducted elsewhere.[4] The executive director carries out her duties on behalf of the plaintiff by making arrangements for the plaintiff's numerous off-site activities and maintaining office equipment and supplies at the site. The executive director largely manages her planning responsibilities through the use of the telephone or the plaintiff's Internet web site.

---

[3] The plaintiff's executive director is paid $5000 a year less than her predecessor, Janet Cuevas, because she lives on the premises.

[4] The plaintiff asserts, and the trial court found, that the plaintiff conducted seminars at the Milford property. The transcript pages cited by the plaintiff do not support this assertion.

The plaintiff's physical use of the property is limited. The board of directors convenes at the property four to six times a year. Subcommittees and planning groups sometimes meet there, but not on a regular basis. Only one member of the board visits the property weekly. On rare occasions, the president of the board and invited speakers stay overnight in a third floor bedroom. A library located on the premises attracts a visitor or two from time to time, but most people access the library through the plaintiff's web site.

The plaintiff benefits from the fact that the executive director and her husband are in residence. The executive director can respond to inquiries even when they are made at odd hours or on a weekend day. Her husband, Bruce Martin, maintains the grounds. As a result, the plaintiff is saved the cost of a caretaker to look after the premises at night.[5]

I

GOVERNING LEGAL STANDARDS

The first issue raised by the defendant on appeal is whether the judgment of the trial court should be reversed because the court misconstrued § 12-81 (7) as a matter of law. Pursuant to that statute, real property is eligible for a tax exemption (1) if its owner is "organized exclusively for scientific, educational, literary, historical or charitable purposes" and (2) if its property is used "exclusively for carrying out one or more of such purposes . . . ." There is no dispute in this case about the first condition. The defendant maintains, however, that the court adopted an improper standard in deciding that the plaintiff's use of its charitable property satisfied the requirement of exclusivity.

_____

[5] The trial court found that the residence of the plaintiff's executive director at the property enabled her to carry out the purposes of the organization efficiently.

According to the defendant, the statutory tax exemption afforded to charitable organizations is unavailable to an organization that uses its property "more than incidentally" for any purpose that is not scientific, educational, literary, historical or charitable. If that were the right standard, it would follow, as the defendant maintains, that any significant use of charitable property as a private residence would make the property ineligible for property tax relief. The defendant has raised a claim of statutory interpretation that warrants our plenary review. See *Nastro* v. *D'Onofrio,* 76 Conn. App. 814, 818, 822 A.2d 286 (2003).

The plaintiff properly rejoins that our Supreme Court has rejected the defendant's interpretation of § 12-81 (7). Instead of adopting a bright line rule, our Supreme Court has held that "whether property is used exclusively for carrying out an educational purpose is necessarily governed by the specific facts in the individual case." (Internal quotation marks omitted.) *Loomis Institute* v. *Windsor,* 234 Conn. 169, 177, 661 A.2d 1001 (1995). The fact bound standard that governs the exclusivity of use of property for educational purposes also governs the exclusivity of use of property for charitable purposes. See *H.O.R.S.E. of Connecticut, Inc.* v. *Washington,* 258 Conn. 553, 563, 783 A.2d 993 (2001).

In this case, therefore, the trial court properly examined the facts of the plaintiff's operation of its Milford property without first articulating a specific standard by which the extent of the plaintiff's charitable use would be measured. The defendant's argument of law is unpersuasive.

## II

## FACTUAL FINDING OF EXCLUSIVITY

The defendant is on firmer ground in its challenge to the validity of the trial court's factual finding that

the plaintiff's use of its property was exclusively charitable. We review a trial court's finding of fact to ascertain whether its finding was "clearly erroneous in view of the evidence and pleadings in the whole record . . . ." Practice Book § 60-5; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The trial court recognized that the plaintiff had the burden of establishing its right to an exemption. "Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms." (Internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 258 Conn. 560; *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718, 539 A.2d 573 (1988). "[T]he burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption." (Internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 560.

The court also recognized that, to determine whether the plaintiff had met its burden of proof, the court had to examine "the manner and means [that the charity has adopted] for the accomplishment of [its charitable] purposes"; (internal quotation marks omitted); as our Supreme Court held in *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 258 Conn. 563. It further cited that case for its holding that "[t]he extent to which an organization uses its property for purposes not directly related to its charitable purpose . . . is relevant to the determination of whether the organization is entitled to tax-exempt status under § 12-81 (7)." Id., 563–64.

Applying these principles, the trial court concluded that the plaintiff had satisfied its burden of proof because the presence of the executive director on the premises carried out the objectives of the plaintiff, which were to promote peace and social justice. The

court found that "[t]he position of [the executive director] is not a nine to five position, but rather one that calls for a great deal of flexibility, her workday having no specific hours or number of days per week. It calls for her being available evenings as well as weekends. Guests are accommodated there. Meetings are held at various hours of the day and evening, all of which require the presence of the executive director. The only benefit derived by the organization as a result of her residing there is her continued presence on the property, enabling her to efficiently carry out the purposes of the organization. There is no pecuniary benefit."

The defendant maintains that the court's finding is clearly erroneous because anything more than a de minimis residential use of charitable property disqualifies a charitable organization from receiving a property tax exemption. This argument mirrors, on a factual basis, the defendant's similar argument of law, which we have already found unpersuasive earlier in this opinion. Even significant residential use of charitable property does not invariably preclude a tax exemption. See *Loomis Institute* v. *Windsor*, supra, 234 Conn. 176–79.

The defendant also argues, more persuasively, that the underlying facts found by the trial court are insufficient to support its ultimate factual finding about the use of the plaintiff's property. The court, having described the broad range of the executive director's responsibilities, found that it was efficient for her to reside on the premises to fulfil these responsibilities. Significantly, the court did not find that her continuous presence on the premises was *essential* to the plaintiff's achievement of its mission.

We must decide, therefore, whether a charitable organization seeking a tax exemption satisfies its burden of proof of exclusive use by demonstrating that a resident employee performs his or her duties more efficiently

than a nonresident employee. The taxpayer has not cited, and we have not found, any case that so holds.

There have been, of course, a number of cases that have found an eleemosynary institution to be eligible for a tax exemption for property that was used for residential purposes. What distinguishes those cases from this one is that, in each of them, the resident who occupied the premises was *required* to be on call twenty-four hours a day.

In *Loomis Institute* v. *Windsor*, supra, 234 Conn. 169, an educational institution owned residential property on its campus that was used to house some of its faculty. The school established the fact that the faculty residences were used exclusively for educational purposes by presenting proof that the faculty members residing therein were required to act in loco parentis and to provide counseling for the school's boarding students. They were on call, twenty-four hours a day, to take care of any problems that might arise at the school. Id., 172–73. Because their immediate presence was essential to the education of the school's boarding students, the school was held to be entitled to a tax exemption. Id., 177–79; see also *Woodhall School, Inc.* v. *Bethlehem*, Superior Court, judicial district of Litchfield, Docket No. 74492 (January 11, 2000).

In *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 279 A.2d 561 (1971), a hospital sought and received a tax exemption for an apartment building in the immediate vicinity of the hospital that housed residents and interns. The Supreme Court held that this property served the hospital's educational and charitable purposes because the hospital needed to have house staff available at all hours in order to fulfil the hospital's duty to its patients. Id., 371–72, 377–78. We may take judicial notice of the fact that residencies and intern-

ships are important parts of physicians' professional training.

It may be that, even if the trial court had found that the executive director was required to reside at the plaintiff's property, the plaintiff would not have been entitled to a tax exemption because the cited cases pertain to tax exemptions for educational institutions. As a matter of law, such organizations have an affirmative right to tax exemptions that other charitable organizations do not enjoy. See *Loomis Institute* v. *Windsor*, supra, 234 Conn. 176. Indeed, some educational institutions such as the Wadsworth Atheneum in Hartford, by virtue of a special act of the legislature, are entitled to a tax exemption for activities that are *reasonably related* to charitable and educational activities. See *Wadsworth Atheneum* v. *Hartford*, Superior Court, judicial district of Hartford at Hartford, Docket No. 538328 (October 25, 1995) (16 Conn. L. Rptr. 25).

For today, it is sufficient to observe that the plaintiff has not cited, and we have not found, any case holding that *efficiency* is a defining characteristic of an exclusively charitable use of property that serves as the residence of the charity's employee. On the other hand, the defendant has not cited, and we have not found, any case supporting the defendant's view that § 12-81 (7) defines exclusivity to permit only incidental noncharitable use of property owned by a charity.

In the absence of precedential support for the plaintiff's claimed entitlement to tax relief, we return to the underlying principle that the plaintiff bore the burden of establishing the fact that its property was used exclusively for charitable purposes. The record does not support the finding of the trial court that the plaintiff proved the existence of a compelling linkage between its charitable purposes and the use of its property as the residence of its executive director. We conclude that,

because this subsidiary finding was clearly erroneous, the trial court's ultimate conclusion that the plaintiff was entitled to a property tax exemption under the circumstances of this case was likewise improper. Accordingly, the court's judgment in favor of the plaintiff cannot be sustained.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.