PATRICK BENGTSON *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 24809)

Schaller, Flynn and Peters, Js.

Argued September 10—officially released November 16, 2004

*Russell S. Palmer*, for the appellant (plaintiff).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

### Opinion

PETERS, J. This is a case of statutory interpretation. In order to deal with the severe risk of injury to the public that is caused by intoxicated drivers, the legisla-

ture has enacted two basic statutes. It is undisputed that, pursuant to General Statutes § 14-227a, an adult who is determined to have been operating a motor vehicle with an elevated blood alcohol content of 0.08 of a percent or more may be arrested for the crime of "operating a motor vehicle while under the influence of intoxicating liquor" and risks suspension of his operator's license under General Statutes § 14-227b.[1] It is equally undisputed that, pursuant to General Statutes § 14-227g, no person under twenty-one years of age "shall operate a motor vehicle on a public highway" with an elevated blood alcohol content of 0.02 of a percent or more.[2] The issue that we must decide is whether a driver under the age of twenty-one risks suspension of his operator's license even though § 14-227g does not contain the phrase "operating . . . under the influence of intoxicating liquor . . . ." The driver maintains that, because of this omission, the

[1] General Statutes § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105 . . . while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight." See also, General Statutes § 14-227b (b) (stating that person placed under arrest for operating motor vehicle while under influence of intoxicating liquor must be informed "that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section"); General Statutes § 14-227b (c) (describing circumstances under which police officer may revoke and take possession of license of person arrested for operating motor vehicle while under influence of intoxicating liquor); General Statutes § 14-227b (d) (referencing procedures set forth in subsection [c] for revoking license of person arrested for operating motor vehicle while intoxicated); General Statutes § 14-227b (e) (setting forth criteria for determining date on which commissioner of motor vehicles may suspend license of person arrested for operating motor vehicle while intoxicated).

[2] General Statutes § 14-227g (a) provides in relevant part: "No person under twenty-one years of age shall operate a motor vehicle on a public highway . . . while the ratio of alcohol in the blood of such person is two-hundredths of one per cent or more of alcohol, by weight."

commissioner of motor vehicles had no authority to suspend his operator's license and was limited to pursuit of a criminal prosecution. The trial court nonetheless dismissed the driver's appeal from the administrative decision suspending his license. We affirm the judgment of the trial court.

The parties agree about the underlying facts. On May 17, 2003, a police officer stopped the plaintiff for operating a motor vehicle without functioning taillights, a violation of General Statutes § 14-96c.[3] The plaintiff was then eighteen years old. While talking to the plaintiff, the officer noticed a strong odor of alcohol on the plaintiff's breath. The plaintiff agreed to take standard field sobriety tests, which he was unable to pass. The officer then drove the plaintiff to police headquarters where the plaintiff agreed to a breath test, which showed elevated blood alcohol content levels of 0.251 of a percent and 0.232 of a percent, sufficient to support an arrest under either § 14-227a or § 14-227g. He was arrested for driving without functioning taillights in violation of General Statutes § 14-96c (d) and for operating a motor vehicle in violation of § 14-227g.

The defendant commissioner of motor vehicles (commissioner) initiated license suspension proceedings against the plaintiff on the basis of the plaintiff's failing to pass a chemical alcohol test. At the request of the plaintiff, a hearing officer was appointed by the commissioner to consider whether license suspension was warranted. The hearing officer stated: "The record reflects that the [plaintiff], a minor, was arrested for violation of [§] 14-227g . . . . The hearing proceeded under [§] 14-227b, which requires a higher [blood alcohol content] reading to produce a violation. Accordingly, there is no prejudice to the [plaintiff]."

---

[3] General Statutes § 14-96c requires that all motor vehicles manufactured after October 1, 1957, have at least two functioning tail lamps.

The plaintiff appealed to the trial court. The court dismissed the appeal on grounds differing from those on which the hearing officer had relied. The court acknowledged the plaintiff's claim that, having been issued a summons for violating § 14-227g, he had not been arrested for "operating . . . under the influence" as that phrase is used in § 14-227b (g). The court nonetheless found this claim unpersuasive because, in its view, it was improper for the plaintiff to assume that "an offense charged at a police station (as specified in a summons) establishes the offense for which a person was arrested (taken into custody) outside the police station." In the court's view, the fact that the plaintiff ultimately was charged under § 14-227g did not alter the fact that the police officer had arrested him for "operating under the influence"[4] as that phrase is defined in § 14-227a (a) and used in § 14-227b.

In the plaintiff's appeal to this court, he has raised three issues. He claims that the trial court (1) misconstrued § 14-227b, (2) improperly substituted its own finding that the plaintiff had been arrested under § 14-227a for the hearing officer's finding that he had been arrested under § 14-227g and (3) improperly found that the plaintiff had not been arrested for violating § 14-227g. The latter two contentions assume that the legislature did not intend to authorize license suspensions for violations of § 14-227g. The principal issue in this case, therefore, is whether the plaintiff's assumption about the interrelationship between §§ 14-227a, 14-227b and 14-227g is justified. Because we conclude that it is not, we affirm the judgment of the trial court upholding the suspension of the plaintiff's operator's license.[5]

---

[4] In view of our disposition of the plaintiff's appeal, we need not address the merits of the court's reasoning.

[5] We note that the plaintiff has not challenged the validity of his arrest for violating General Statutes § 14-96c (d). That infraction would not, however, justify suspension of his operator's license. Furthermore, the plaintiff does not deny that, if he had been arrested for violation of General Statutes § 14-227a, on the facts found, the hearing officer properly could have suspended his license.

The gravamen of the plaintiff's appeal is that, properly construed, § 14-227b is inapplicable in his case because the license suspension authorized by that section is triggered only by an arrest for violation of § 14-227a. It is undisputed that a question of statutory interpretation is a question of law that is entitled to plenary review by this court. *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 686, 855 A.2d 212 (2004). As far as we can tell, until this case, no appellate court has had the occasion to interpret § 14-227g.

"We begin with our well established principles of statutory interpretation in analyzing the [plaintiff's] claim. Our legislature recently has enacted No. 03-154, § 1, of the 2003 Public Acts, which provides: 'The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' " *Bergeson* v. *New London*, 269 Conn. 763, 769–70, 850 A.2d 184 (2004). The relationship between § 14-227b and § 14-227g is *not* plain and unambiguous. Accordingly, in ascertaining the meaning of these statutes, we will "look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . ." (Internal quotation marks omitted.) *Jones* v. *Kramer*, 267 Conn. 336, 343, 838 A.2d 170 (2004); see also *Promoting Enduring Peace, Inc.* v. *Milford*, 83 Conn. App. 124, 129, 847 A.2d 1110, cert. denied, 270 Conn. 914, 853 A.2d 528 (2004).

The plaintiff's statutory interpretation argument focuses on the fact that, in relevant part, § 14-227b (g)

provides that a motor vehicle license suspension hearing must determine, among other things, "(1) [whether] the [arresting] police officer [had] probable cause to arrest the person for operating a motor vehicle *while under the influence of intoxicating liquor* . . . [and] (2) [whether] *such* person [was] placed under arrest . . . ." (Emphasis added.) General Statutes § 14-227b (g).[6] According to the plaintiff, the use of the word "such" establishes that the operator has to have been arrested for violating § 14-227a rather than for violating § 14-227g. In further support of this argument, the plaintiff notes that although subsections (b) and (g) of § 14-227b cross reference several related statutes, these subsections do not refer to § 14-227g.[7] Section 14-227g, in turn, does not use the words operating "under the influence of intoxicating liquor" in describing the conduct that it penalizes. To put it precisely, the plaintiff maintains that only an arrest under a statute that expressly penalizes the operation of a motor vehicle "while under the influence of intoxicating liquor" subjects a driver to the risk of suspension of his driving license. We disagree.

The plaintiff's argument fails to take into account a number of other relevant provisions in §§ 14-227a, 14-227b and 14-227g. Starting with the text of § 14-227g, we note that subsection (c) states: "The provisions of subsections (b), (d), (f), (g), (h), (i) and (j) of section

[6] General Statutes § 14-227b (g) provides that a motor vehicle license suspension hearing shall be limited to the following issues: "(1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle . . . ."

[7] General Statutes § 14-227b (b) references § 14-227a (e). General Statutes § 14-227b (g) references § 14-227b (c).

14-227a, adapted accordingly, shall be applicable to a violation of subsection (a) of this section." Subsection 14-227a (h) authorizes the suspension of any operator's license after conviction for operating a motor vehicle while intoxicated.[8] It is apparent, therefore, that under some circumstances, an arrest under § 14-227g authorizes suspension of the operator's driver's license.

Section 14-227b authorizes the commissioner to pursue the civil remedy of license suspension as a sanction for intoxicated operators that is independent of the criminal remedy provided by § 14-227a.[9] Each statute was enacted in order jointly and severally "to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process." *State* v. *Hickam*, 235 Conn. 614, 624, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996), overruled in part on other grounds, *State* v. *Crawford*, 257 Conn. 769, 779–80 & n.7, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). Indeed, to implement this public policy, our Supreme Court has held that an administrative suspension does not foreclose a subsequent criminal action. Id. In sum, the

---

[8] General Statutes § 14-227a (h) provides in relevant part: "(1) Each court shall report each conviction under subsection (a) of this section to the Commissioner of Motor Vehicles, in accordance with the provisions of section 14-141. The commissioner shall suspend the motor vehicle operator's license or nonresident operating privilege of the person reported as convicted for the period of time required by subsection (g) of this section. . . ."

[9] General Statutes § 14-227a (h) provides in relevant part: "(1) Each court shall report each conviction under subsection (a) of this section to the Commissioner of Motor Vehicles, in accordance with the provisions of section 14-141. The commissioner *shall* suspend the motor vehicle operator's license or nonresident operating privilege of the person reported as convicted . . . ." (Emphasis added.) Pursuant to subsection (e) of General Statutes § 14-227b, the commissioner of motor vehicles "*may* suspend any license or nonresident operating privilege" of any person upon receipt of the results of a blood or urine test indicating that that person had an elevated blood alcohol content while operating a motor vehicle. (Emphasis added.)

authority to suspend an operator's license is determined by the terms of § 14-227b and not those of § 14-227a.

It is common ground that § 14-227b authorizes the suspension of the license of any person who was "placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor . . . ." General Statutes § 14-227b (b). What does the term "under the influence of intoxicating liquor" mean? The plaintiff argues that the meaning of the term is established by § 14-227a (a), which describes it as "an elevated blood alcohol content [of] eight-hundredths of one per cent or more of alcohol, by weight." General Statutes § 14-227a (a). Because the intoxicated operator's statutes contain no other definition of "under the influence of intoxicating liquor," the plaintiff would read only the § 14-227a (a) definition into § 14-227b (g). It is undeniable that § 14-227g does not use the magic words "under the influence" in describing the conduct that it proscribes.[10]

We are not persuaded by the plaintiff's linguistic argument in light of subsection (n) of § 14-227b. Subsection (n) of § 14-227b defines "elevated blood alcohol con-

---

[10] General Statutes § 14-227g provides: "(a) No person under twenty-one years of age shall operate a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while the ratio of alcohol in the blood of such person is two-hundredths of one per cent or more of alcohol, by weight.

"(b) The fact that the operator of a motor vehicle appears to be sixteen years of age or over but under twenty-one years of age shall not constitute a reasonable and articulable suspicion that an offense has been or is being committed so as to justify an investigatory stop of such motor vehicle by a police officer.

"(c) The provisions of subsections (b), (d), (f), (g), (h), (i) and (j) of section 14-227a, adapted accordingly, shall be applicable to a violation of subsection (a) of this section."

tent," which is the determinant of intoxication under both § 14-227a and § 14-227g.[11] It states that, "[f]or the purposes of this section, 'elevated blood alcohol content' means (1) a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight, or (2) *if such person is under twenty-one years of age, a ratio of alcohol in the blood of such person that is two-hundredths of one per cent or more of alcohol, by weight.*" (Emphasis added.) General Statutes § 14-227b (n). It would be illogical for the legislature to have placed subsection (n) in "this section," i.e., § 14-227b, if "this section" did not include arrests under § 14-227g. The canons of statutory construction instruct us to interpret statutes using our common sense to avoid absurd results. *Vibert* v. *Board of Education,* 260 Conn. 167, 177, 793 A.2d 1076 (2002); *Modern Cigarette, Inc.* v. *Orange,* 256 Conn. 105, 120, 774 A.2d 969 (2001).

We conclude, therefore, that the texts of the applicable statutes demonstrate the intent of the legislature for linkage between the statutes governing driving while under the influence of liquor. We conclude that the legislature manifested its intent that persons arrested for violation of § 14-227g fall within the regulatory authority for license suspension contained in § 14-227b.

Our construction of the applicability of §14-227b to arrests under § 14-227g finds support in the public policy behind these statutes. Connecticut case law establishes that our legislature has promulgated "an

[11] General Statutes § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . while such person has an elevated blood alcohol content . . . ." Section 14-227g (a) provides in relevant part: "No person under twenty-one years of age shall operate a motor vehicle on a public highway . . . while the ratio of alcohol in the blood of such person is two-hundredths of one per cent or more of alcohol, by weight."

unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers." *State* v. *Stevens*, 224 Conn. 730, 739, 620 A.2d 789 (1993). License suspension furthers that policy by keeping intoxicated operators from injuring other users of our public roads. It would be anomalous, to say the least, to permit the suspension of the driver's licenses of adult drivers and to forbid the suspension of licenses for younger drivers. Indeed, the inclusion of 0.02 within the definition of "elevated blood alcohol content" indicates the opposite.

The legislative history of § 14-227g documents the legislature's concern that young drivers should not be allowed to drink and drive. To this end, Representative Michael P. Lawlor explained that, if a person under the age of twenty-one is placed under arrest and tests positive for a blood alcohol level of 0.02 of a percent or above, he should lose his or her license temporarily even though the intoxication does not reach the 0.08 level that applies to adult drivers.[12] Interestingly, Representative Lawlor further opined that a violation of § 14-227g "is not even a crime. It is simply a loss of license under these circumstances." 38 H.R. Proc., Pt. 19, 1995 Sess., p. 6834.

We conclude, therefore, that the commissioner properly suspended the plaintiff's operator's license for violation of § 14-227g. It is irrelevant that, under the circumstances of this case, the high level of alcohol in the plaintiff's blood also would have warranted his

---

[12] Representative Lawlor summarized the purpose of the bill that would become General Statutes § 14-227g as follows: "[I]t allows in the .02, the so-called zero tolerance situation . . . . A person under the age of 21 gets involved in a major accident or is otherwise placed under arrest and if the police officer suspects alcohol, but does not necessarily have a probable cause for DWI, they can ask the person to submit to a test and if they test positive over .02, they can lose their license for a period of time. It is not a DWI charge." 38 H.R. Proc., Pt. 19, 1995 Sess., p. 6834.

arrest for violating § 14-227a. The judgment of the trial court was therefore proper, even though it was based on reasoning that differs from the basis for our decision on this appeal. See *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978) (stating that, "[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it").

The judgment is affirmed.

In this opinion the other judges concurred.