## NSA PROPERTIES, INC. *v.* CITY OF STAMFORD
### (AC 26432)

Flynn, C. J., and Schaller and Hennessy, Js.

---

Argued January 3—officially released April 3, 2007

*Kenneth B. Povodator*, assistant corporation counsel, with whom, on the brief, was *Thomas M. Cassone*, corporation counsel, for the appellant (defendant).

*M. Dean Montgomery*, for the appellee (substitute plaintiff).

*Opinion*

HENNESSY, J. The defendant, the city of Stamford, appeals from the trial court's judgment for the substitute plaintiff, the National Spiritual Assembly of the

Baha'i of the United States (assembly),[1] determining that a parcel of its land containing a caretaker cottage was entitled to tax exempt status under General Statutes § 12-81.[2] The defendant claims that the court improperly rendered judgment in favor of the assembly (1) after determining that the parcel containing a caretaker cottage was entitled to tax exempt status under § 12-81 when there was insufficient evidence to support such an exemption pursuant to § 12-81 (7)[3] and (13),[4] and (2) for all the tax years under consideration rather than on a year by year basis. We agree with the defendant that there is insufficient evidence to support an exemption pursuant to § 12-81 (7) or (13) and, therefore, reverse in part the judgment of the trial court. As a result of our holding, we do not reach the other issue on appeal.

The following facts and procedural history provide the necessary background to resolve the defendant's

[1] On December 22, 1997, the court granted a motion to substitute the National Spiritual Assembly of the Baha'i of the United States as the party plaintiff. The substitution was granted pursuant to articles of merger between the named plaintiff, NSA Properties, Inc., and the assembly.

[2] General Statutes § 12-81 enumerates the characteristics of tax exempt property. This appeal concerns subsection (7), which is the charitable exemption, and subsection (13), which is the house of worship exemption.

[3] General Statutes § 12-81 (7) provides in relevant part: "Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes . . . [shall be exempt from taxation] provided (A) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (B) in 1965, and quadrennially thereafter, a statement shall be filed on or before the first day of November with the assessor . . . of any . . . city . . . in which any of its property claimed to be exempt is situated. . . ."

[4] General Statutes § 12-81 (13) provides: "Subject to the provisions of section 12-88, houses of religious worship, the land on which they stand, their pews, furniture and equipment owned by, or held in trust for the use of, any religious organization [shall be exempt from taxation] . . . ."

appeal. In February, 1990, the six parcels of property located at 503 Wire Mill Road, Stamford, were donated as a gift to New Era Foundation for International Development, Inc. (foundation), a New York not-for-profit corporation. The foundation was an affiliate of the assembly, a charitable religious trust with headquarters in Illinois. In 1990, the foundation applied for tax exempt status pursuant to § 12-81 (7) for all six parcels of the real property at Wire Mill Road. Tax exempt status, pursuant to the charitable exemption allowed under § 12-81 (7), was granted for the parcel containing the main house and the parcel containing the caretaker house. The other four parcels, which were unimproved, were not granted tax exempt status. In February, 1992, the foundation dissolved and transferred the property to an Illinois not-for-profit title holding corporation, known as NSA Properties, Inc. (NSA). NSA was organized to hold title to real property for the benefit of the assembly, which, as a trust, could not own real property. NSA is exempt from federal taxation pursuant to 26 U.S.C. § 501 (c) (2) of the Internal Revenue Code.[5] In September, 1993, NSA requested a tax exemption, again pursuant to the charitable exemption in § 12-81 (7). According to testimony from both the defendant and the assembly, there was no request for a religious exemption. The assessor for the defendant, in response to NSA's request for a tax exemption, went to the property and determined that the property did not merit an exemption. NSA brought an action pursuant to General Statutes § 12-119,[6] challenging what it claimed was an

---

[5] Section 501 (c) (2) of the Internal Revenue Code provides an exemption for corporations organized exclusively for holding title to property for an organization that is itself exempt pursuant to § 501 (c).

[6] The relevant language of General Statutes § 12-119 is as follows: "When it is claimed that a tax has been laid on property not taxable in the . . . city in whose tax list such property was set . . . the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last

illegal assessment by the assessor. An action, pursuant to § 12-119, is brought directly to the Superior Court.[7] On October 14, 1994, the assembly was reorganized as an Illinois not-for-profit corporation with the same name. At this time, NSA was merged with the assembly, and the assembly was substituted as the plaintiff. The assembly is exempt from federal taxation pursuant to 26 U.S.C. § 501 (c) (3).[8]

In its complaint, NSA claimed that the six parcels of real property were exempt from taxation. While the action was pending, the parties reached an agreement granting an exemption to the parcel of land that contained the main house. The case was tried before an attorney trial referee (referee). The parties stipulated that the only issue to be determined was whether the five parcels were entitled to tax exempt status for the period of October 1, 1993, to November, 2001.[9] The referee issued a report in which he concluded that the five remaining parcels were tax exempt. The defendant filed an objection to the acceptance of the report.

evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. . . ."

[7] Originally, NSA appealed the valuation of the property at 503 Wire Road to the board of tax review for the city of Stamford. In the NSA's complaint to the trial court, it alleged two claims. The first claim was an incorrect valuation and was appealed pursuant to General Statutes § 12-117a, which allows the aggrieved party to appeal an assessment to the board of tax review. The second, and the only claim before us, was a claim of wrongful assessment brought pursuant to General Statutes § 12-119, which alleged that the property was exempt from taxation pursuant to General Statutes § 12-81.

[8] Section 501 (c) (3) of the Internal Revenue Code provides an exemption for charitable, religious and educational organizations.

[9] The property was sold in November, 2001.

The court accepted the factual findings in the referee's report. The court summarized those factual findings as follows: (1) the assembly is a religious organization practicing the Baha'i faith, (2) the parcel with the main house had been found by the defendant to be tax exempt, and the controversy was centered around the use of the other parcels, (3) the assembly received no rents, income or profits from any of the parcels, (4) the four unimproved parcels were used by the church members as "part of their educational and spiritual purposes," and (5) the caretaker's cottage had a library and was used for "gatherings, study and education . . . ." Furthermore, "[t]he attorney trial referee concluded that all five parcels comprising the subject property were exempt from taxation pursuant to § 12-81 (7) and (13) because they were all being used as incidental to the assembly's charitable or religious purposes [or both]. Accordingly, the referee recommended that judgment enter in favor of the [assembly]."

As to the referee's conclusions of law, the court rejected the conclusion pertaining to the unimproved parcels of land. The court concluded that the four unimproved lots were not tax exempt as a matter of law, citing *Grace N' Vessels of Christ Ministries, Inc.* v. *Danbury*, 53 Conn. App. 866, 872, 733 A.2d 283 (1999) (unimproved lot not exempt from taxation where there is neither building or other improvement used for charitable purposes, nor plans for improvements). The court did, however, adopt the referee's conclusion of law as to the parcel of land with the caretaker's cottage that the parcel was exempt from taxation pursuant to § 12-81. The defendant filed this appeal from the court's judgment in favor of the assembly. Additional facts will be set forth as necessary.

We first set forth our standard of review. "We review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of

review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

"The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption." *Loomis Institute* v. *Windsor*, 234 Conn. 169, 176, 661 A.2d 1001 (1995). "Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . It is also well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption." (Citation omitted; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001). We strictly construe such statutory exemptions because "[e]xemption from taxation is the equivalent of an appropriation of public funds [where] the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citation omitted; internal quotation marks omitted.) *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718–19, 539 A.2d 573 (1988).

I

The defendant first argues that there was insufficient evidence to support an exemption pursuant to § 12-81 (7). Specifically, the defendant argues that there was

no finding that the property was used exclusively for exempt purposes and that there was insufficient evidence to support such a finding. We agree.

Charitable organizations, although exempt from federal and state income taxes, must pay local property taxes unless their property is used "exclusively for scientific, educational, literary, historical or charitable purposes . . . ." General Statutes § 12-81 (7). Pursuant to that statute, real property is eligible for a tax exemption (1) if its owner is "organized exclusively for scientific, educational, literary, historical or charitable purposes" and (2) if its property is used "exclusively for carrying out one or more of such purposes . . . ." General Statutes § 12-81 (7). There is no dispute in this case about the first condition. The defendant maintains, however, that there is neither a factual finding nor evidence to support the requirement for tax exemption that the property be used exclusively for charitable purposes.

Our Supreme Court has held that "whether property is used exclusively for carrying out an educational purpose is necessarily governed by the specific facts in the individual case." (Internal quotation marks omitted.) *Loomis Institute* v. *Windsor*, supra, 234 Conn. 177. The fact bound standard that governs the exclusivity of use of property for educational purposes also governs the exclusivity of use of property for charitable purposes. See *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, supra, 258 Conn. 563.

In the present case, it appears that the court sidestepped the exclusivity requirement when it adopted the referee's conclusions as factual findings. Specifically, the court stated that "the cottage was used as a residence for the caretakers, but the referee found as a fact that the caretaker's cottage was used for charitable and religious purposes as well." The court, citing

*Red Top, Inc.* v. *Board of Tax Review,* 181 Conn. 343, 354, 435 A.2d 364 (1980), went on to state that "[t]his finding cannot be reversed because it is well established that '[w]hether the property for which an exemption is claimed is used exclusively for one of the required purposes must be determined from the facts.' " The court then concluded that "[t]he factual finding by the attorney trial referee that the caretaker's cottage was used for tax exempt purposes has sufficient support in the record to warrant acceptance of his recommendations in this regard." In this case, however, the factual findings do not address the exclusive use of the property, only the incidental use of the property. Furthermore, a diligent review of the record reveals that there is insufficient evidence to support a finding of exclusive use.

As we previously stated, it is well settled that the plaintiff has the burden of establishing its right to an exemption. To determine whether a plaintiff has met its burden of proof, the court must examine "the manner and means [that the charity has adopted] for the accomplishment of [its charitable] purposes." (Internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington,* supra, 258 Conn. 563. Furthermore, "[t]he extent to which an organization uses its property for purposes not directly related to its charitable purpose . . . is relevant to the determination of whether the organization's property is entitled to tax-exempt status under § 12-81 (7)." Id., 563–64.

The defendant argues that the underlying facts found by the referee and adopted by the court are insufficient to support the court's ultimate conclusion that the parcel containing the caretaker's cottage should be tax exempt. The court found that "the issue is whether there is evidence in the record to support the attorney trial referee's findings of fact that the subject premises were used for charitable or religious purposes [or

both]."[10] The court found that "the transcript reveals that meetings, including study groups, prayers and religious feasts and services, took place . . . in the carriage house. The caretaker testified that it was advantageous to hold meetings in the . . . cottage because the library was upstairs where there were reference books and materials which were used 'if we had an issue that we had to go to the writings to work out.' In addition, the caretakers were responsible for security on the thirteen acres, as well as maintenance of the premises."[11] Significantly, there was no reference to a finding, nor is there any evidence in the record to support a finding, that the caretaker's presence on the premises was essential to the assembly's achievement of its mission.

This case is similar to *Promoting Enduring Peace, Inc.* v. *Milford*, 83 Conn. App. 124, 847 A.2d 1110, cert. denied, 270 Conn. 914, 853 A.2d 528 (2004), in which a request for an exemption was denied. The organization in *Promoting Enduring Peace, Inc.*, like the assembly in this case, was a charitable organization. Id., 127. In *Promoting Enduring Peace, Inc.*, the organization used the Milford property as its main office for many years. Id. The executive director and her husband lived on the property. Id. The property was used daily for planning the organization's many activities, which were conducted elsewhere. Id. The executive director carried out her duties on behalf of the organization by making arrangements for numerous off-site activities and maintaining office equipment and supplies at the site. Id.

[10] We note that the defendant also argues that the finding of the referee, and the subsequent adoption of the finding by the court, that the property was exempt from taxation pursuant to § 12-81 (13) was not properly before the trial court because the assembly was not "aggrieved." We address this argument in part II.

[11] We note that the thirteen acres referred to in the caretaker's testimony includes the four parcels of land that have been determined not to be tax exempt.

The organization's physical use of the property was limited. The board of directors met at the property four to six times a year; subcommittees and planning groups occasionally, although not regularly, met there; rarely, the president of the board and invited speakers stayed overnight; and a library was located on the premises and was available to visitors. Id., 128. The organization benefited from the fact that the executive director and her husband lived on the premises, as they were available at odd hours and on the weekends. Id. In addition, the executive director's husband maintained the grounds. Id.

In assessing the merits of the claim in *Promoting Enduring Peace, Inc.*, that the property was exempt from property tax, we concluded that the trial court improperly had found that the organization was entitled to an exemption because there was no finding or evidence to support that the continuing presence of the executive director on the property was essential to the organization's achievement of its mission. In *Promoting Enduring Peace, Inc.*, we distinguished cases in which the property in question was determined to be tax exempt even though a person resided on the premises. The distinguishing factor was that having residents on the property was essential to carrying out the charitable purpose of the organization. See *Loomis Institute* v. *Windsor*, supra, 234 Conn. 169 (because faculty members' immediate presence essential to education of school's boarding students, school held to be entitled to tax exemption); *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 279 A.2d 561 (1971) (housing for residents and interns in immediate vicinity of hospital essential to fulfill hospital's duty to its patients). Furthermore, in *Promoting Enduring Peace, Inc.*, we concluded that "even if the trial court had found that the executive director was required to reside at the plaintiff's property, the plaintiff would not have been entitled to a

tax exemption because the cited cases pertain to tax exemptions for educational institutions. As a matter of law, such organizations have an affirmative right to tax exemptions that other charitable organizations do not enjoy." *Promoting Enduring Peace, Inc.* v. *Milford,* supra, 83 Conn. App. 133. The caretaker in our case is similar to the executive director in *Promoting Enduring Peace, Inc.,* because there is no evidence that the caretaker's presence was required for the assembly's achievement of its mission.

There is, however, evidence that it was advantageous occasionally to hold meetings at the caretaker's cottage. Thus, we must decide whether a charitable organization seeking tax exemption satisfies its burden of proof of exclusive use by demonstrating that it is advantageous to have a resident caretaker. The taxpayer has not cited, and we have not found, any case holding that mere advantageousness is a defining characteristic of an exclusively charitable use of property.

In the absence of precedential support for the assembly's claimed entitlement to tax relief, we return to the underlying principle that the assembly bore the burden of establishing the fact that its property was used exclusively for charitable purposes. There was no finding by the referee, and the evidence does not support, that the assembly proved the existence of a compelling connection between its charitable purposes and the use of its property as the residence for a caretaker. We conclude that because no evidence was introduced to support a finding of exclusive use, the court's ultimate conclusion that the assembly was entitled to a property tax exemption under the circumstances of this case was improper.

## II

The defendant next argues that there was insufficient evidence to support an exemption pursuant to § 12-81 (13). Furthermore, the defendant argues that the court's

conclusion that the parcel was tax exempt pursuant to any of the religious exemptions was not proper because the assembly did not request a religious exemption in its original application for an exemption submitted to the assessor. Although we conclude that the exemption pursuant to § 12-81 (13) was properly before the court, we agree that there was insufficient evidence to support a tax exemption pursuant to § 12-81 (13).

The referee found that the assembly was exempt from taxation pursuant to § 12-81 (13), and the court adopted that finding. This section provides an exemption for houses of worship "[s]ubject to the provisions of section 12-88, houses of religious worship, the land on which they stand . . . owned by, or held in trust for the use of, any religious organization . . . ." General Statutes § 12-81 (13). The defendant, however, claims that a religious exemption for the assembly's property was not properly before the court because NSA did not request a religious exemption on its tax exempt application. Although the transcript supports the defendant's claim that the exemption was not claimed in the 1993 application for exemption submitted by NSA to the assessor, the application for exemption from the assessor is irrelevant. See *Faith Center, Inc.* v. *Hartford*, 192 Conn. 434, 437, 472 A.2d 16, cert. denied, 469 U.S. 1018, 105 S. Ct. 432, 83 L. Ed. 2d 359 (1984).

The assembly's appeal from the actions of the assessor was brought pursuant to § 12-119. In actions brought pursuant to § 12-119, the question before the court is whether the city has levied an illegal tax. *E. Ingraham Co.* v. *Bristol*, 146 Conn. 403, 407, 151 A.2d 700 (1959), cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1960). Levying a tax on property exempt from taxation would be an illegal exaction. See *Crescent Beach Assn.* v. *East Lyme*, 170 Conn. 66, 363 A.2d 1045 (1976). The burden of proving an exemption from taxation rests on the taxpayer. *Modugno* v. *Tax Commissioner*, 174

Conn. 419, 422, 389 A.2d 745 (1978). In an action brought under § 12-119, that burden would have to be satisfied before the trial court. Whether the taxpayer was required to claim the exemption before the assessor would have no evidential significance in the § 12-119 proceeding. It is the pleading before the court that is relevant. The assembly's § 12-119 appeal claimed exemption pursuant to § 12-81. The defendant never requested a more complete or particular statement of the allegations against it. As such, the assembly could introduce evidence to the trier of fact to establish any exemption under § 12-81.

Although the assembly could introduce evidence to the trier of fact, in this case, it failed in its burden of proof. Any finding that the caretaker's cottage was a house of worship by the referee is clearly erroneous because the evidence proves the contrary. In fact, the assembly's own witnesses testified that there are only two houses of worship in the Baha'i faith, one in Willamette, Illinois, and one in Israel. Further evidence reveals that in the Baha'i faith, the followers gather together every nineteen days in followers' homes. Occasionally, and only when the caretakers are at home, the meetings are held at the caretakers' cottage. Occasional meetings, at the caretakers' convenience, do not make a home a house of worship. See *Woodstock* v. *The Retreat, Inc.*, 125 Conn. 52, 57, 3 A.2d 232 (1938) (purpose of statutory provision exempting houses of worship from taxation was to exempt ordinary church edifices, owned and used in usual way for religious worship); see also *Masonic Building Assn. of Stamford, Connecticut, Inc.* v. *Stamford*, 119 Conn. 53, 174 A. 301 (1934). The assembly has failed to establish that its property was exempt pursuant to § 12-81 (13) because it did not provide evidence that the caretaker's cottage was a "house of worship."

The assembly has not established its entitlement to a tax exemption pursuant to either § 12-81 (7) or (13). There was insufficient evidence to support the conclusions of the court. Accordingly, the court's judgment in favor of the assembly regarding the caretaker parcel cannot be sustained.

The judgment is reversed as to the parcel containing the caretaker's cottage and the case is remanded with direction to render judgment for the defendant as to that parcel. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.